**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TRILLIUM, TRANSPORTATION FUELS, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-1197-PRW |
| | ) | |
| INTEGRAL ENERGY, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court are Plaintiff Trillium Transportation Fuels, LLC's Motion

for Summary Judgment (Dkt. 24) and Motion to Deem Motion for Summary Judgment as

Confessed (Dkt. 35). After these motions were filed, the Court ordered the parties to file

briefs addressing whether Trillium fulfilled the requirements of the dispute resolution

provision contained in the parties' Sales Agreement. For the reasons that follow, the Court

**STAYS** the action to permit the parties to fulfill the remaining mandatory conditions of the

dispute resolution provision.

*Background*

This case arises out of a contract dispute between Plaintiff Trillium Transportation

Fuels, LLC ("Trillium") and Defendant Integral Energy, LLC ("Integral"). In 2016,

Integral solicited Trillium to provide a bid to supply compressed natural gas fueling

equipment and instillation services for a fueling station in Odessa, Florida. Soon thereafter,

1

the parties entered into an Equipment Sales Agreement ("Sales Agreement") for Trillium

to provide equipment and installation services to Integral. The Sales Agreement set the

contract price, which was due upon Trillium's completion of its obligations under the

contract and submission of an invoice to Integral.

From December 2016 to March 2018, Trillium completed its delivery of equipment

and installation services under the Sales Agreement. On June 12, 2020, Trillium submitted

an invoice to Integral for the amount set by the Sales Agreement. It is undisputed that the

price as stated in the invoice has not been paid by Integral. After Integral failed to pay the

price stated in the invoice in full, Trillium filed this action, bringing claims for breach of

contract. Integral filed an answer, raising several defenses.

Of particular relevance here is Integral's claim that Trillium failed to comply with

the dispute resolution provision outlined in Paragraph 10 of the Sales Agreement prior to

brining this lawsuit. Paragraph 10 reads as follows:

> 10. Disputes. In the event of a dispute between the parties arising from this
> Agreement, the parties respective authorized representatives having day to
> day responsibility for the matter governed by the Agreement shall attempt in
> good faith to resolve the dispute. In the event the dispute is not resolved
> within five (5) days following negotiations by such representatives, the
> dispute shall be referred to the respective project managers (or equivalent) of
> the parties, who will attempt in good faith to resolve the dispute. In the event
> the dispute is not resolved within (10) days following referral of the dispute
> to such project managers, the dispute shall be referred to the respective
> executive level officers of the parties, who shall attempt in good faith to
> resolve the dispute. In the event the dispute is not resolved within fifteen (15)
> days following referral of the dispute to such executive officers, the parties
> may proceed to resolve the dispute by an agreeable form of formal alternative
> dispute resolution; or, if no such agreement on formal alternative dispute
> resolution is reached, the parties may proceed to litigation.[1]

---

[1] CNG Fuel Equipment Sales Agreement, Ex. 1, (Dkt. 1) ¶ 10, at 5.

In its Complaint, Trillium maintained that the parties "engaged in several months of negotiation" to resolve the dispute prior to initiating litigation.[2] But the Complaint did not explain whether those negotiations fulfilled the steps proscribed by Paragraph 10. Integral's Answer, however, directly addressed Paragraph 10. In its list of "Additional Defenses," the Answer "assert[ed] the applicability of a binding agreement between the parties governing resolution of disputes pursuant to the terms of the Equipment Sales Agreement," and claimed that Trillium "has failed to comply with the dispute resolution provision . . . prior to filing this action."[3]

After several months of discovery, Trillium filed a Motion for Summary Judgment.[4] After Integral failed to respond, Trillium then filed a Motion to Deem Motion for Summary Judgment as Confessed.[5] But because neither party had further addressed the dispute over the dispute resolution provision, the Court directed the parties to file briefs addressing the following questions: (1) whether the steps outlined in Paragraph 10 of the Sales Agreement are mandatory; and (2) whether the mandatory steps, if any, were satisfied prior to Trillium filing this suit.[6] Both parties filed responses.

In its response, Integral maintains that all aspects Paragraph 10—including both the referral steps the parties "shall" take and what Integral takes to be a requirement to discuss

---

[2] Compl. (Dkt. 1), ¶16, at 4.

[3] Answer (Dkt. 15), at 4.

[4] Pl.'s Mot. for Summ. J. (Dkt. 24).

[5] Pl.'s Mot. to Deem Summ. J. as Confessed (Dkt. 35).

[6] Order (Dkt. 39), at 2.

a form of formal alternative dispute resolution—are conditions precedent to litigation. While it concedes that Trillium properly exhausted some aspects of the provision, Integral maintains that two aspects of Paragraph 10 were not complied with prior to the filing of this suit. First, Integral argues that the executive-referral provision is a condition precedent to litigation and was not complied with in this case. Second, Integral argues that this same provision requires the executive-level officers to actually discuss attempting to resolve the dispute by an agreeable form of formal alternative dispute resolution before proceeding to litigation. And since there was no discussion between executive-level officers in this case, Integral argues that this requirement was also not fulfilled.

Trillium disagrees. It maintains that Paragraph 10 contains both mandatory and permissive dispute resolution steps, but that even the mandatory steps are not conditions precedent to litigation. But in any event, Trillium argues that it complied with all aspects of Paragraph 10 prior to filing this suit, including the executive-referral provision. Therefore, Trillium argues, this dispute is properly before the Court and summary judgment is appropriate.

### *Legal Standard*

Neither party has identified controlling precedent under state law. So to decide whether Paragraph 10 creates conditions precedent to litigation, the Court looks to general principles of contract law.[7] "The primary goal of contract interpretation is to determine and

---

[7] There is some dispute between the parties regarding the applicable law governing the interpretation of the Sales Agreement. *See* Pl.'s Mot. for Summ. J. (Dkt. 24), at 9–11. The Court finds it unnecessary to resolve that dispute at this time. The parties have not identified any conflict between Florida and Oklahoma law on the question at issue here. And the

give effect to the intention of the parties at the time the contract was made."[8] "When there is a written agreement, the whole of the contract is to be taken together and the intention of the parties is to be ascertained from the writing alone, if possible."[9] A contract's language is to be read "in its plain and ordinary meaning."[10] But a contract's individual terms must not be read in isolation. Rather, a contract and its various provisions must be read as a whole. "The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with each other and that construction adopted which, if possible, gives effect to every part of the contract."[11]

General principles of contract law also provide guidance on the existence of contractual conditions precedent to litigation. "When a contract requires that the parties engage in certain dispute resolution procedures before filing suit, the satisfaction of such

---

Court finds that both bodies of law are substantially similar for all purposes relevant to the disposition of the present issues in this case.

[8] *Bank of the Wichitas v. Ledford*, 151 P.3d 103, 111 (Okla. 2006). *See Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. Dist. Ct. App. 2005) ("The parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language.").

[9] *BAP, LLP v. Pearman*, 250 P.3d 332, 336 (Okla. Civ. App. 2011) (cleaned up) (quoting *Oklahoma Southern Life Ins. Co. v. Mantz*, 131 P.2d 70, 72 (Okla. 1942)). *See Famiglio v. Famiglio*, 279 So. 3d 736, 740 (Fla. Dist. Ct. App. 2019) ("It is, of course, well settled that when interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." (cleaned up)).

[10] *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936, 946 (Okla. 2007). *See Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. Dist. Ct. App. 1999) ("[T]he words used by the parties must be given their plain and ordinary meaning.").

[11] *Sullivan v. Gray*, 78 P.2d 688, 690 (Okla. 1938). *See Famiglio*, 279 So. 3d at 740 ("Provisions in a contract should be construed in the context of the entire agreement and read in a way that gives effect to all of the contract's provisions." (cleaned up)).

procedures is a condition precedent to filing suit."[12] Contracts need not contain magic

words or phrases expressly requiring that a dispute resolution process precede litigation to

create a condition precedent.[13] Instead, dispute resolution provisions must always be read

in context,[14] and "[a] contract may provide that compliance with its dispute resolution

provisions is a condition precedent to a suit on the contract by saying so either explicitly

or implicitly."[15]

### *Discussion*

The parties' current positions require the Court to answer four questions: (1)

whether the executive-referral provision is a condition precedent to litigation; (2) whether

Paragraph 10 requires the executive officers to actually discuss attempting to resolve the

dispute by an agreeable form of formal alternative dispute resolution before proceeding to

---

[12] *Taylor v. Grunigen*, 2022 WL 1239955, at *17 (D. Mass. Apr. 26, 2022).

[13] *See, e.g.*, *Pulse Sys., Inc. v. SleepMed Inc.*, 2016 WL 738201, at *3 (D. Kan. Feb. 23, 2016) ("Although the mediation clause is not entirely clear, and it does not *expressly* state that a suit for damages cannot be filed prior to mediation, it does require that the parties 'first' attempt an informal resolution and then, if that is unsuccessful, that they obtain a mediator 'to mediate the dispute.'" (emphasis in original)); *Santana v. Olguin*, 208 P.3d 328, 334 (Kan. Ct. App. 2009) ("We acknowledge that the subject provision does not expressly require that submission to mediation must *precede* the filing of suit and that it could easily have so provided by insertion of the phrase 'prior to filing suit.' Nevertheless, we conclude that this sequence is implied or contemplated when considering the totality of the provision." (emphasis in original)).

[14] *See HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003).

[15] 21 Williston on Contracts § 57:12 (4th ed. 2022). *See Santana*, 208 P.3d at 334 (noting that conditions precedent can be "implied or contemplated when considering the totality of the [dispute resolution] provision"). *Cf. In re Est. of Boyar*, 592 So. 2d 341, 343 (Fla. Dist. Ct. App. 1992) (noting that conditions precedent can be created by "plain, unambiguous language or by necessary implication"). Neither party has identified any principles of contract law in either Florida or Oklahoma inconsistent with this general rule.

litigation; (3) if either provision creates a condition precedent to litigation, whether Trillium fulfilled those conditions prior to filing this lawsuit; and (4) if a condition precedent has not been exhausted, whether the Court should stay or dismiss this case. Resolving these questions requires the Court to first interpret Paragraph 10 of the Sales Agreement—a question of law governed by traditional principles of contract interpretation—and then apply the Agreement as interpreted to the facts in the record.

## I.      *The executive-referral process is a condition precedent to litigation.*

The executive-referral process outlined in the third sentence of Paragraph 10 is a condition precedent to litigation. Read as a whole, Paragraph 10 establishes a series of mandatory dispute resolution processes—each denoted by the term "shall."[16] The "commonly repeated rule is that *shall* is mandatory,"[17] and though the term may be given a permissive meaning in some contexts, "when the word *shall* can reasonably be read as mandatory, it ought to be so read."[18] That is particularly the case here, where Paragraph 10 uses the term "shall" in contrast to the term "may,"[19] which is ordinarily understood as

---

[16] *See* CNG Fuel Equipment Sales Agreement, Ex. 1, (Dkt. 1) ¶ 10, at 5.

[17] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 111 (2012) (emphasis in original). *See Osprey LLC v. Kelly-Moore Paint Co. Inc.*, 984 P.2d 194, 199 (Okla. 1999) ("'Shall' is ordinarily construed as mandatory[.]"); *S.R. v. State*, 346 So. 2d 1018, 1019 (Fla. 1977) (noting that shall "is normally meant to be mandatory in nature").

[18] Scalia & Garner, *supra*, at 114 (emphasis in original).

[19] *See id*. at 170 (explaining that "a material variation in terms suggests a variation in meaning" and "where the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea").

denoting a permissive step.[20] Not only does reading the uses of shall in Paragraph 10 to refer to a mandatory condition read the term "in its plain and ordinary meaning,"[21] but it is difficult to imagine that the parties would have intended to convey no difference in meaning when, after using the term shall on three occasions in the first three sentences of Paragraph 10, the parties switched to using the term may in the fourth sentence.[22]

While the use of the term shall makes clear that the parties intended to make the executive referral mandatory, the structure of Paragraph 10 confirms that the parties intended to make exhaustion of the executive-referral process a condition precedent to litigation. Read in context, Paragraph 10 outlines a detailed, comprehensive dispute resolution process that establishes three escalating steps that the parties "shall" take and then declares that "[i]n the event the dispute is not resolved" by the proceeding processes, "the parties may proceed to litigation."[23] The "necessary implication" of using mandatory language for the executive-referral provision and then structuring the provision in that

---

[20] The term "may"—particularly when used, as here, alongside "shall"—connotes a conditional or optional avenue to pursue. *See Osprey*, 984 P.2d at 199; *Agile Assur. Grp., Ltd. v. Palmer*, 147 So. 3d 1017, 1018 (Fla. Dist. Ct. App. 2014) ("Generally, use of the word *may* deems relevant language permissive." (emphasis in original)); Scalia & Garner, *supra*, at 112–15.

[21] *Oklahoma Oncology & Hematology*, 160 P.3d at 946.

[22] *Cf. Walker v. Builddirect.Com Techs. Inc.*, 349 P.3d 549, 552 (Okla. 2015) ("In Oklahoma, as in most jurisdictions, the paramount objective of contract interpretation is to effectuate the intent of the parties as expressed by the terms of the contract. 'The cardinal rule' in interpreting written contracts is to ascertain the parties expressed intent and give effect to the same, 'if it can be done consistently with legal principles.'" (quoting *Continental Supply Co. v. Levy*, 247 P. 967, 968 (Okla. 1926)).

[23] CNG Fuel Equipment Sales Agreement, Ex. 1, (Dkt. 1) ¶ 10, at 5.

manner is that the parties intended exhaustion of the executive-referral process to be a condition precedent to litigation.[24]

The Court's interpretation of Paragraph 10 is supported by other court's interpretations of similar provisions. Take, for example, the provision at issue in *Kemiron Atlantic, Inc. v. Aguakem International, Inc.*[25] There, the Eleventh Circuit addressed whether a contractual provision required mediation as a condition precedent to binding arbitration.[26] The contract at issue contained a multi-step dispute resolution provision, which included a series of steps that the parties "shall" proceed to.[27] After providing that the parties "shall" proceed to mediation, the contract provided that "[i]n the event that the dispute cannot be settled through mediation, the parties shall submit the matter to arbitration within ten (10) days after receipt of notice by either party."[28]

The court held that even though the contract did not expressly state that mediation was a condition precedent to arbitration, "under the plain language of the contract," the condition precedent was implied.[29] The mandatory "shall" language indicated that the parties "must" exhaust mediation.[30] And the inclusion of the clause stating that "[i]n the event" the dispute could not be settled through mediation right before the clause providing

---

[24] *See In re Est. of Boyar*, 592 So. 2d at 343.

[25] 290 F.3d 1287 (11th Cir. 2002).

[26] *Id.* at 1291.

[27] *Id.*

[28] *Id*. at 1289.

[29] *Id.* at 1291.

[30] *Id.*

that the parties could then proceed to arbitration made clear that the parties intended mediation to be a condition precedent to arbitration.[31]

The provision at issue in this case is similar to the one at issue in *Kemiron Atlantic*. Here, Paragraph 10 provides a multi-step dispute resolution process, including a series of steps that the parties "shall" proceed to. Those shall provisions are then followed by a provision providing that the parties may proceed to litigation "[i]n the event" that the prior provision requiring referral to the parties' executive officers does not resolve the dispute. Like *Kemiron Atlantic*, the structure of the Paragraph 10 and the ordinary meaning of the terms used plainly convey the parties' intent to make referral of the dispute to the parties' executive officers a condition precedent to litigation.

Trillium advances several arguments as to why the executive-referral provision should not be read to impose a condition precedent to litigation. None is convincing.

Trillium first relies on Judge Rambo's opinion in *Shook of West Virginia, Inc. v. York Sewer Authority*.[32] There, the court held that a contractual provision requiring a contractor to refer contract disputes to the project engineer—who was an employee of the opposing party—was not a condition precedent to litigation. Trillium maintains that the rationale of *Shook* applies here and requires the same result in this case. But the provision in *Shook* made no mention of litigation.[33] It was thus reasonable for the court to conclude that a contract that made no mention of litigation could not be construed as expressly or

---

[31] *Id.*

[32] 756 F. Supp. 848 (M.D. Pa. 1991).

[33] *See id.* at 849–50.

impliedly creating a condition precedent to litigation. The Sales Agreement at issue here is much different. As explained above, the contract not only contemplates litigation, but it also includes a detailed, multi-step dispute resolution process that the parties "shall" engage in that is immediately followed by a provision providing that if that process does not lead to a resolution, the parties may then proceed to litigation. Unlike *Shook*, the ordinary meaning of the provision at issue here provides ample evidence that the parties intended the executive-referral process to be a condition precedent to litigation.[34]

Trillium also relies on *Bombardier Corporation v. National Railroad Passenger Corporation*,[35] but that case is also distinguishable. There, the court relied on a number of factors to find that the contract's dispute resolution provision was not a condition precedent to litigation: (1) the ambiguity caused by other contractual provisions suggesting that the dispute resolution provision was optional; (2) the fact that the dispute resolution process at issue could not provide a remedy for the full claim at issue; (3) the complex nature of the dispute; and (4) the expense associated with the dispute resolution process. None of those factors are present here. Trillium has not identified any other contractual provisions

---

[34] Equally important to the *Shook* court's conclusion was that the contract there did not "adequately define the procedures to use or limit the time within which the engineer," the designated dispute resolver in that case, "can retain authority over the claims." *Id.* at 854. The court was concerned that the engineer—an employee of one of the interested parties in the dispute—could delay reaching a decision to push potential litigation down the road to benefit one party in the dispute. *Id.* The Sales Agreement here is much different. Paragraph 10 provides firm time limits, which, if followed diligently, only delay litigation by thirty days. And no step in the process includes a unitary dispute resolver with a potential conflict of interest.

[35] 298 F. Supp. 2d 1 (D.D.C. 2002).

suggesting that Paragraph 10's "shall" provisions are optional. Nor would the dispute resolution process be unable to remedy the full claim at issue; the contract provides no limit for the types of disputes the executive discussions can remedy. Further, the dispute at issue here is not complex; it is an ordinary breach-of-contract claim that is well within the competency of the respective executives to resolve. Finally, there is no indication here that the parties would incur serious expense by engaging in the executive-level discussions.[36]

II.     *Paragraph 10 required the parties to discuss submitting the dispute to an agreeable form of formal alternative dispute resolution prior to proceeding to litigation.*

The fourth sentence of Paragraph 10 provides that "[i]n the event the dispute is not resolved within fifteen (15) days following referral of the dispute to such executive officers, the parties may proceed to resolve the dispute by an agreeable form of formal alternative dispute resolution; or, if no such agreement on formal alternative dispute

---

[36] Trillium also relies on language from *Bombardier* that, read in isolation, appears to suggest a condition precedent must be expressly identified as such, which Trillium seems to conclude requires the use of the phrase "condition precedent to litigation." But that type of clear-statement rule is inconsistent with general principles of contract law, *In re Est. of Boyar*, 592 So. 2d at 343 (noting that conditions precedent can be created by "plain, unambiguous language *or by necessary implication*" (emphasis added)), and would be an extreme outlier in the law. Even in the context of particularly strong clear-statement rules, like waivers of sovereign immunity, courts do not impose "magic words" requirements if the intent of the relevant parties is "clearly discernable" from the text "in light of traditional interpretive tools." *FAA v. Cooper*, 566 U.S. 284, 291 (2012). Further, the passage Trillium relies on for its clear-statement rule must be read in context. The *Bombardier* court twice stressed that such a high standard applied in that case because one party maintained that the ADR provision was a "prerequisite to litigation for any type of claim, no matter how peripheral, significant, or comprehensive, so long as it is related in to [sic] the contract." *Bombardier*, 298 F. Supp. 2d at 4. *See id.* at 5. But in this case, the dispute Integral maintains is subject to the Paragraph 10 falls well within the scope of disputes contemplated by the provision.

resolution is reached, the parties may proceed to litigation."[37] Integral argues that this provision required the parties' executive officers to discuss referring the dispute to formal alternative dispute resolution prior to instituting litigation. The Court agrees. While the fourth sentence does not require the parties to ultimately submit the dispute to formal alternative dispute resolution, the plain language of the provision necessarily implies that before the parties litigate a dispute, they must first seek to reach an agreement on submitting the dispute to an agreeable form of formal alternative dispute resolution. While it's true that Trillium's conduct demonstrates a desire to forgo formal alternative dispute resolution, Paragraph 10 nonetheless required Trillium's executives to discuss the prospect of such a path with Integral's executives.

III.    *The evidence in the record indicates that Trillium failed to complete the mandatory executive referral prior to initiating this litigation.*

In the alternative, Trillium argues that even if the executive-referral process is construed as a condition precedent, the Court should still proceed to ruling on the motion for summary judgment because Trillium complied with all aspects of Paragraph 10 prior to filing this suit, including the executive-referral process. But the only evidence in the record on this issue, the deposition of Integral's President, Anddrikk Frazier, cuts in the opposite direction.

Recall that Paragraph 10 required the parties to refer the dispute "to the respective executive level officers of the parties, who shall attempt in good faith to resolve the

---

[37] CNG Fuel Equipment Sales Agreement, Ex. 1, (Dkt. 1), ¶ 10, at 5.

dispute."[38] Frazier's testimony indicates that, despite attempting to do so, he was unable to discuss the contract dispute with Trillium's executive-level officers.[39] Trillium all but concedes this point. But it argues that it fulfilled the requirements of the executive-referral provision because Frazier's testimony indicates that he was able to speak with two representatives of Trillium, who Frazier "understood . . . were communicating information to senior management of Trillium."[40] But even if communicating with employees who were then communicating with the relevant executive-level officers was sufficient to fulfill the executive-referral provision—a proposition that seems unlikely given the structure of Paragraph 10—the passage of Frazier's deposition on which Trillium relies in no way indicates that the representatives were communicating information to senior management. While Frazier admitted that he "expect[ed]" the representatives to be sharing information "with other folks within Trillium," he also explained that he had no "idea who those people would have been."[41] Thus, the only evidence on which Trillium relies fails to establish that the dispute in this case was "referred to the respective executive level officers of the parties, who . . . attempt[ed] in good faith to resolve the dispute."[42] And if the dispute was never referred to the executives, the executives could not have discussed submitting the dispute

---

[38] *Id.*

[39] *See* Ex. 1 (Dkt. 43), at 17.

[40] Pl.'s Br. (Dkt. 42), at 5.

[41] *See* Ex. 1 (Dkt. 43), at 16.

[42] CNG Fuel Equipment Sales Agreement, Ex. 1, (Dkt. 1), ¶ 10, at 5.

to an agreeable form of alternative dispute resolution. Accordingly, the Court finds that Trillium failed to fulfill the two remaining conditions precedent to litigation.

IV.     *The appropriate remedy is to stay these proceedings to permit the parties to complete the executive-referral process.*

Having concluded that Trillium failed to complete two conditions precedent to litigation, the Court is faced with the question of how to precede with this case. "[D]ismissal is not required when the parties fail to comply with dispute resolution proceedings provided for in a contract."[43] Rather, when faced with noncompliance with dispute resolution provisions, "district courts are vested with discretion to determine whether stay or dismissal is appropriate."[44] "[G]ranting a stay to permit" a dispute resolution provision to be complied with  "(or to require it) will often be appropriate."[45] Given the lengthy litigation that has already occurred in this case, the Court finds that

---

[43] *Kane Builders S & D, Inc. v. Maryland CVS Pharmacy, LLC*, 2013 WL 2948381, at *3 (D. Md. June 13, 2013).

[44] *Swartz v. Westminister Services, Inc.*, 2010 WL 3522141, *2 (M.D. Fla. Sept. 8, 2010). *See Pulse Sys.*, 2016 WL 738201, at *4 (same); *Dominion Transmission, Inc. v. Precision Pipline, Inc.*, 2013 WL 5962939, at *4 (E.D. Va. Nov. 6, 2013) (same); *Advanced Bodycare Solutions, LLC v. Thione Intern. Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) (explaining that when enforcing dispute resolution provisions, "district courts have inherent, discretionary authority to issue stays in many circumstances"); *N-Tron Corp. v. Rockwell Automation, Inc.*, 2010 WL 653760, at *7 (S.D. Ala. Feb. 18, 2010) (collecting cases). *Cf. Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936) (same).

[45] *Advanced Bodycare*, 524 F.3d at 1241. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an [dispute resolution] clause is to stay the proceedings rather than to dismiss outright.").

staying this proceeding to permit the parties to comply with the executive-referral provision is the appropriate resolution in this case.

### *Conclusion*

Accordingly, this action is **STAYED** for a period of sixty (60) days, through and including July 24, 2023, to enable the parties to perform the remaining mandatory dispute resolution processes identified in Paragraph 10 of the Sales Agreement. On or before July 24, 2023, the parties are **DIRECTED** to file a joint report setting forth the status of their negotiation efforts. Given the ample period allotted for the relatively simple remaining dispute resolution procedures, it is not anticipated that any extension of the stay will be needed. The parties are expected to act diligently to implement the contractual dispute resolution mechanism without delay.[46]

**IT IS SO ORDERED** this 23rd day of May 2023.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[46] Nothing in this Order should be construed as requiring the exhaustion of Paragraph 10's requirements if Defendant frustrates or prevents the occurrence of the negotiations. *See* 13 Williston on Contracts § 39:3 (4th ed. 2022) ("It is a general principle of contract law that if one party to a contract hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused.").